Witner v. Zeman.

---

KLEMENT WITNER
v.
JOSEF ZEMAN ET AL.

*Trust Deed—Foreclosure—Payment.*

1. The possession of notes by the payee raises a strong presumption that they are unpaid.

2. The burden of proof is upon the party making claim of payment.

3. In proceedings to foreclose a trust deed, this court holds that the claim of payment is unsupported by the evidence.

[Opinion filed February 13, 1889.]

APPEAL from the Superior Court of Cook County; the
Hon. HENRY M. SHEPARD, Judge, presiding.

Mr. JAMES FRAKE, for appellant.

Messrs. KRAUS, MAYER & STEIN, for appellees.

GARNETT, P. J.   This is a suit in chancery to foreclose a
trust deed given by Jakub Jelinek and his wife to J. B.
Belohradsky to secure a principal note for $800, due three
years after date, and coupon notes representing the interest
on such principal note, payable to the order of the makers,
dated August 14, 1881.   The notes were indorsed by the
makers and delivered to the appellant, Witner.   Payments
were made before and at the time of maturity of the princi-
pal note, sufficient to reduce the debt to $400.   The prem-
ises by which the notes were secured were conveyed by
Jelinek and wife to Josef Zeman, who agreed to pay the
incumbrance, and made the several payments referred to.
The defense now relied on is full payment, which the court
below found to be true, and dismissed the bill.   Some time
before the maturity of the principal note Witner, in company
with a man named Zak, called at Zeman's house and informed
Zeman that he was the holder of the notes and trust deed.
Previous to that time Zeman had made several payments to
Belohradsky, from whom Witner received them.   Witner
testifies that at this interview he told Zeman that he must
make no more payments to Belohradsky.

Zak testifies that Witner then told Zeman he should pay
all money to him (Witner) on account of those papers.   Ze-
man denies this, but says Witner told him to settle with
Belohradsky.   Zeman's wife and daughter, Jelinck and one
Hubschman were also present at this interview.   The evidence
given by his wife and daughter tends to corroborate Zeman;
but Hubschman, who is disinterested, makes no mention of
any direction to pay or settle with Belohradsky.   Jelinek was

not called as a witness, although he was a boarder at Zeman's house, and appears to have been his friend.   In any event Witner retained the notes, never leaving them with Belohradsky, and on or about August 14, 1884, he met Zeman at the office of Belohradsky.   Zeman then paid Belohradsky $200 and it was passed over to Witner.   At the same time Zeman executed another trust deed to Belohradsky to secure a $400 note, payable to the order of the maker, which was afterward fraudulently sold by Belohradsky, and Zeman has been compelled to pay the same.   It is claimed by Zeman that the substance of what then passed between the parties was an agreement that the new trust deed should be considered a cancellation of the first.   But Witner then refused to surrender his papers and said Zeman would have to wait.   It is true Belohradsky did then promise Zeman, in Witner's presence, that when he straightened this matter up he would return to him the first trust deed; that it would take about eighteen days to put the second mortgage of record, and then he would give Zeman the first.   That is Zeman's own account of it. There was nothing in this conversation which made Belohradsky the agent of Witner; there was no promise by Witner to guarantee the performance of Belohradsky's agreement. He had a right to presume that Belohradsky meant to pay him what was due after the second trust deed was recorded, and qualify himself for performing his agreement with Zeman. He remained silent, except when Zeman wanted the first trust deed and notes delivered up to him at once, but when he heard that demand he said Zeman would have to wait.   He had no reason to intrude himself into any arrangement that Zeman and Belohradsky saw fit to make between themselves. It was his right to hold his own papers and act for himself, which we think the evidence shows he did.   What occurred after the execution of the note for $400 supports the view thus presented.   Zeman's daughter testifies that after the settlement (that is the arrangement made at the time of the execution of the note for $400) Witner called at their house and her father asked him to wait for his money.   She says she thinks Mr. Heichman (meaning, no doubt, Hubschman)

was then present.    In reference to the same interview Hubschman swears that Zeman said: " Witner, it would have been best if we had settled this money ourselves.    Belohradsky is going and coming, and we can't tell when he will come back." Zeman swears that after the settlement he often went to Witner's place to inquire whether he had got the money for the papers, and Witner often came to his place to inquire whether Belohradsky was at home.    In November, 1884, Witner placed the $800 note in the hands of Antony Kozel, and in a conversation between Kozel and Zeman, a few days later, Zeman said: " You can't get $800 out of me, because I have paid $400 on this."

Witner's continuous possession  of the notes in question raises a strong presumption that they were never paid.    That presumption is supported by the weight of the evidence in the record, and should have prevailed in the finding of the court below.    The burden of proving payment or settlement was on the appellees.    It is not sufficient that the evidence may be said to leave the question in serious doubt.    The court below heard the case on written depositions and documentary evidence and the finding is not invested with the presumptions in its favor that would obtain if the witnesses had personally appeared and testified orally.    Baker v. Rockalrand, 118 Ill. 366.

The decree is reversed and remanded, with directions to the Superior Court to compute the amount now due, as shown by the evidence, on the notes held by the appellant, and to enter a decree of foreclosure.

*Reversed and remanded.*